IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DRUE CHICHI WALLACE,

    Plaintiff,

v.

CECIL COUNTY FAIR, INC., et al.,

    Defendants.

Civil Action No.: GLR-19-1802

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants Cecil County Fair, Inc. ("Cecil County"), Don Moore, Jo Anne Bashore, and Monica Mason's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 26). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant the Motion.

## I.  BACKGROUND[1]

Every July, Cecil County hosts an eight-day fair (the "Fair" or "County Fair") at the Fair Hill Natural Resources Management Area in Cecil County, Maryland. (Am. Compl. ¶ 2, ECF No. 25). Plaintiff Drue Chichi Wallace, who is Jewish, has participated in the Fair since 2007. (<u>Id.</u> ¶ 14). Wallace breeds goats, chickens, and other animals that compete for

---

[1] The Court takes the following facts from Plaintiff Drue Chichi Wallace's Amended Complaint and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citations omitted).

Fair titles, and she volunteers with the "Tailwinds Trotters," a local 4-H club that participates in the Fair's Horse Herdsman competition.[2] (Id. ¶¶ 11–14).

On July 23, 2018, Wallace and other fairgoers were camping near the horse barns. (Id. ¶ 17). Although alcohol is prohibited at the Fair, Wallace and at least one other parent had alcohol at their campsite, and they drank one alcoholic beverage with their dinner.[3] (Id. ¶¶ 16–17). However, no one in the group was intoxicated or behaving in a disorderly or disruptive manner. (Id. ¶ 17). Nonetheless, Defendant Don Moore—a member of the Fair's executive board—and several police officers confronted Wallace, demanding that she remove any remaining alcohol from the fairgrounds. (Id. ¶¶ 3, 18). Wallace complied, removing a cooler and box containing alcohol. (Id. ¶ 18). An incident report was prepared, reflecting that Wallace was in possession of alcohol; however, the report failed to identify anyone else in the group who had alcohol at the campsite. (Id. ¶ 19). Wallace alleges that she was the only Jewish fairgoer in the group. (Id. ¶ 20).

On July 28, 2018, the final night of the Fair, Wallace was at the horse barn with 4-H participants and their parents when she was again confronted by a police officer, who accused her of being in possession of alcohol; the officer searched the area around Wallace but did not find any alcohol. (Id. ¶¶ 23–25). The officer then had a conversation with

---

[2] 4-H is a national youth development and mentoring organization that encourages young people to participate in health, science, and civil engagement projects. See https://4-h.org/about/what-is-4-h/ (last visited Aug. 19, 2020).

[3] Wallace alleges that although the Fair's executive board advertises the Fair as alcohol-free, the alcohol ban has not been enforced for years, and alcohol-related items, including wine glasses, are available at the Fair. (Am. Compl. ¶ 16). Wallace also alleges that various board members have consumed alcohol at the Fair. (Id.).

Defendants Jo Anne Bashore and Monica Mason, members of the Fair's executive board, who stood nearby watching the confrontation. (Id. ¶ 25). The officer returned to Wallace and asked her to leave the fairgrounds for allegedly being in possession of alcohol. (Id.).

In the fall of 2018, Moore allegedly informed the Fair's board of directors that Wallace was intoxicated at the Fair on July 23 and July 28, 2018. (Id. ¶ 30). Subsequently, Wallace received a letter from the Fair's executive board, advising her that because of her "blatant disregard" for Fair rules and because she was consuming alcohol at the Fair on July 28, 2018, she was banned from participating in future County Fairs. (Id.).

In March 2019, Cecil County, through counsel, threatened to pursue criminal charges against Wallace if she attempted to participate in the upcoming Fair. (Id. ¶ 31). Wallace did not attend the 2019 Fair. (Id. ¶ 32).

On June 20, 2019, Wallace sued Defendants. (ECF No. 1). Wallace filed an Amended Complaint on August 20, 2019. (ECF No. 25). The five-count Amended Complaint alleges as to all Defendants, unless otherwise noted: violation of the Public Accommodations Act, 42 U.S.C. § 2000a, et seq. against Cecil County (Count I); conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985 against Moore, Bashore, and Mason (Count II); intentional interference with business relations (Count III); defamation (Count IV); and false light invasion of privacy (Count V). (Am. Compl. ¶¶ 37–67). Wallace seeks compensatory damages and injunctive relief, enjoining Defendants from barring her from participating in future County Fairs. (Id. at 15).[4]

_____

[4] Citations to the Amended Complaint refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

On September 3, 2019, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 26). Wallace filed an Opposition on September 17, 2019. (ECF No. 27). Defendants filed a Reply on October 1, 2019. (ECF No. 28).

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd sub nom.</u>, <u>Goss v. Bank of Am., NA</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.**   **Analysis**

**1.**   **Violation of the Public Accommodations Act (Count I)**

Title II of the Civil Rights Act of 1964, codified at § 2000a, prohibits "discrimination or segregation on the ground of race, color, religion, or national origin" in places of public accommodation. Hodge v. Cordish Co. Inc., No. ELH-17-254, 2017 WL 3007069, at *5 (D.Md. July 14, 2017). To establish a prima facie case for discrimination under § 2000a, a plaintiff must allege that she: "(1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class." Taylor v. Ahold, No. 3:16CV241, 2017 WL 377935, at *1 (E.D.Va. Jan. 23, 2017), aff'd sub nom. Taylor v. Royal Ahold NV, 694 F.App'x 931 (4th Cir. 2017).

When, as here, the plaintiff cannot point to direct evidence of discrimination, she must proffer circumstantial evidence of discrimination sufficient to satisfy the McDonnell

Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). Once the plaintiff establishes a prima facie case for discrimination, the defendant must offer a legitimate, nondiscriminatory reason for plaintiff's treatment. Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001). If the defendant makes this showing, the plaintiff must proffer evidence that the defendant's articulated reason was pretext for unlawful discrimination. Id. Although the evidentiary burden shifts under McDonnell Douglas, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Here, Wallace alleges that Defendants violated § 2000a by banning her from future County Fairs because she is Jewish, and that Defendants' asserted reason for doing so— possession of alcohol and intoxication at the 2018 Fair—is merely pretextual. Defendants challenge the sufficiency of Wallace's § 2000a claim on three grounds, arguing: first, that Wallace neglected to allege that Defendants knew she was Jewish at any point prior to this litigation; second, even if Defendants knew Wallace was Jewish, she failed to allege sufficient facts showing that Defendants engaged in discriminatory practices or intentionally precluded Wallace from attending future Fairs specifically because of her religious affiliation; and third, the Amended Complaint establishes that Wallace was banned from the Fair because of her refusal to comply with the alcohol prohibition. The Court agrees with Defendants.

"As in the context of employment discrimination claims under Title VII, in order to demonstrate a claim of religious discrimination in a place of public accommodation under

Title II, [plaintiff] must show that [defendant] was both aware of [her] religious beliefs, and discriminated against [her] on the basis of those religious beliefs." <u>Wilson v. Twitter</u>, No. 3:20-CV-00054, 2020 WL 3410349, at *13 (S.D.W.Va. May 1, 2020), <u>report and recommendation adopted</u>, No. CV 3:20-0054, 2020 WL 3256820 (S.D.W.Va. June 16, 2020). Here, Wallace alleges, in wholly conclusory terms, that "Defendants actions were taken with knowledge that [she] is a member of a religious minority, and for the purpose of excluding her on the basis of her religion." (Am. Compl. ¶ 36). Although the Court must accept the factual allegations in the Amended Complaint as true and construe them in Wallace's favor, <u>Albright</u>, 510 U.S. at 268, the Court is not obligated to accept as true unsupported factual allegations couched as legal conclusions, <u>Iqbal</u>, 556 U.S. at 678. Wallace's claim is fatally flawed because she fails to allege any facts demonstrating that Moore or the other Defendants had knowledge of her religious affiliation when Moore confronted her on July 23, 2018 or when Defendants subsequently banned her from the Fair.

Unlike race or gender, which are visually discernable—though sometimes inaccurately identified—religious affiliation may not be apparent, and, in this case, Wallace has not alleged otherwise. Wallace has not alleged, for example, that Defendants observed her engaging in religious activities or wearing religious garb prior to confronting her on July 23, 2018 or banning her from the County Fair. In the absence of such allegations, it is unclear whether Defendants knew that Wallace was Jewish and if their decision to ban her from future Fairs was motivated by that knowledge.

Plainly stated, Wallace cannot establish a prima facie claim for discrimination based on religion without alleging facts demonstrating that Defendants were aware of her religious affiliation.[5] See Davis v. Dimensions Health Corp., 639 F.Supp.2d 610, 616 (D.Md. 2009) (finding that plaintiff failed to state a claim for employment discrimination based on religion where plaintiff admitted that he did not know if defendants knew he was Muslim); see also Sahagian v. Paulson, No. PJM 08-1314, 2009 WL 10727665, at *5 (D.Md. May 20, 2009) (concluding that plaintiff failed to establish a prima facie case for discrimination based on religion and national origin under Title VII, in part, because she "offer[ed] no evidence that [defendant] was even aware of her religion or national origin, much less that [defendant] acted discriminatorily on the basis of such knowledge").

Even if Defendants were somehow aware of Wallace's religious affiliation, she has not alleged sufficient facts establishing that she was banned from the Fair because of her religious beliefs. To the contrary, the Amended Complaint makes clear that the Fair is "an alcohol-free, family friendly event," irrespective of whether the alcohol policy is consistently enforced, and that Wallace not only possessed, but also consumed, alcohol on July 23, 2018. (Am. Compl. ¶¶ 16–17). Wallace alleges that Moore and several police officers confronted her that evening, specifically demanding that she remove any alcohol in her possession from the fairgrounds. (Id. ¶ 18). Wallace further alleges that the July 28,

---

[5] Wallace also asserts that "[n]one of the other individuals who were consuming alcohol with [her] on the evening of July 23 are Jewish." (Am. Compl. ¶ 20). However, as with her own religious affiliation, Wallace has not alleged facts suggesting that Defendants knew the religious affiliation of these individuals. Thus, this conclusory allegation fails to support Wallace's claim that Defendants singled her out and treated her more harshly because she is Jewish.

2018 confrontation was also about alcohol. (Id. ¶¶ 23–25). Nonetheless, Wallace essentially asks this Court to infer that she was subsequently banned from the Fair because of her religious affiliation. The Court declines to make that leap in logic based on the conclusory allegations in the Amended Complaint.

At bottom, Wallace has failed to state a claim for discrimination in violation of § 2000a because she has not alleged that Defendants were aware of her religious affiliation or that she was banned from the Fair because of her religious affiliation. Accordingly, Count I will be dismissed.

### 2.    Conspiracy to Interfere with Civil Rights (Count II)

42 U.S.C. § 1985(3) prohibits conspiracies to deprive any person of the equal protection of the laws. To state a claim under § 1985(3), a plaintiff must prove the following: (1) a conspiracy of two or more people, (2) who are motivated by a specific class-based, discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights, (4) resulting in injury to the plaintiff that is (5) traceable to an overt act committed by the defendants in furtherance of the conspiracy. Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). Additionally, the plaintiff "must show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights." Id. at 1377. Conspiracy claims under § 1985 that are "alleged in a merely conclusory manner, in the absence of concrete supporting facts" are insufficient. Id.

Wallace alleges that Moore, Bashore, and Mason conspired to, and did, falsely report that she was consuming alcohol on fairgrounds on July 28, 2018 to have her "wrongfully removed" from the Fair by the Cecil County Sheriff's Department, even

though she was not in possession of, or consuming, alcohol that evening.[6] (Am. Compl. ¶ 48). She further alleges that Moore, Bashore, and Mason then conspired to cite the July 23 and July 28, 2018 incidents as reasons to have her banned from future County Fairs when, in fact, they were motivated by her religious affiliation. (Id. ¶ 49). Conversely, Defendants argue that Wallace's allegations of religious discrimination are insufficient to survive a motion to dismiss, due in large part to her failure to allege that Defendants harbored animosity towards people of the Jewish faith and chose to act upon that animosity by banning her from the Fair. The Court agrees with Defendants.

Wallace has failed to state a claim under § 1985(3) for two reasons. First, her conspiracy allegation is wholly conclusory and devoid of any factual support. Wallace merely asserts that the Defendants "conspired among themselves." (See Am. Compl. ¶¶ 48–49). Invocation of legal phrases, without more, is insufficient to support a conspiracy claim under § 1985(3). See, e.g., Sellner v. Panagoulis, 565 F.Supp. 238, 248 (D.Md. 1982), aff'd, 796 F.2d 474 (4th Cir. 1986) (entering summary judgment in favor of defendants as to plaintiff's § 1985(3) claim because plaintiff "alleged the existence of conspiracies in only the most conclusory way and ha[d] not supported his allegations of conspiracy by reference to material facts"). Because Wallace has not alleged any facts supporting her conspiracy claim, her claim fails as a matter of law.

---

[6] The Court again notes that Wallace admitted she possessed and consumed alcohol at the Fair on July 23, 2018, so it is unclear to the Court why Moore, Bashore, and Mason would fabricate reports that Wallace was in possession of, and consuming, alcohol on July 28, 2018. If Defendants wanted to ban Wallace from the Fair—for whatever reason—it appears that the July 23, 2018 incident provided a sufficient basis for doing so.

Second, Wallace does not allege that Defendants were motivated by a specific class-based, discriminatory animus, i.e., religion, which is essential to a § 1985(3) claim. See Sellner, 565 F.Supp. at 246 (reiterating the necessity of alleging "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in order to state a cause of action under § 1985(3)). Instead, Wallace would have this Court infer that Defendants harbored ill-will towards all people of the Jewish faith because they banned her from the Fair even though, as previously discussed, Wallace has not alleged any facts demonstrating that Defendants were aware of her religious affiliation. The Court declines to make such an assumption.

Wallace has failed to plead essential elements of her § 1985 claim. Accordingly, Count II will be dismissed.

### 3.    State Law Claims (Counts III, IV, and V)

Wallace alleges state law claims for intentional interference with business relations, defamation, and invasion of privacy. Pursuant to 28 U.S.C. § 1367(c)(3), this Court may exercise its discretion and decline to exercise supplemental jurisdiction over state law claims if it dismisses all claims over which it has original jurisdiction. Univ. Gardens Apartments Joint Venture v. Johnson, 419 F.Supp.2d 733, 741 (D.Md. 2006) (citing Bigg Wolf Discount Video Movie Sales, Inc. v. Montgomery Cty., 256 F.Supp.2d 385, 400–01 (D.Md. 2003)). Because the Court concludes that Wallace has failed to state a § 2000a claim in Count I and a § 1985(3) claim in Count II, the Court declines to exercise supplemental jurisdiction over Wallace's remaining state law claims. Accordingly, Counts III, IV, and V will be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Defendants Cecil County Fair, Inc., Don Moore, Jo Anne Bashore, and Monica Mason's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 26) is granted for failure to state a claim as to Counts I and II.  Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the state law claims alleged in Counts III, IV, and V. A separate Order follows.

Entered this 24th day of August, 2020.


_____/s/_____
George L. Russell, III
United States District Judge

12